STATE OF MINNESOTA                                IN DISTRICT COURT

COUNTY OF ITASCA                                  NINTH JUDICIAL DISTRICT

Case Type: CIVIL-PERSONAL INJURY                  COURT FILE NO:

---

Timothy Salisbury,

       Plaintiff,

                                      **SUMMONS**

vs.

Itasca County; Deputy Rob
Johnson, individually and in his
official capacity; Deputy A.J.
Morse, individually and in his
official capacity,

       Defendant.

---

THE STATE OF MINNESOTA TO THE ABOVE-NAMED DEFENDANTS:

You are hereby summoned and required to serve upon the Plaintiff's attorney an answer to the Complaint hereby served upon you within TWENTY (20) days after service of this Summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

      PARTIES ARE REQUIRED TO ATTEMPT ALTERNATIVE DISPUTE RESOLUTION UNDER MINNESOTA LAW, INCLUDING MEDIATION, ARBITRATION, AND OTHER PROCESSES AS SET FORTH IN THE DISTRICT COURT RULES. YOU MAY CONTACT THE COURT ADMINISTRATOR ABOUT RESOURCES IN YOUR AREA.

Dated: July 2, 2009                HAZELTON LAW FIRM, PLLC
                                        ATTORNEYS FOR PLAINTIFF

                                        By:   Michael R. Hughes - #0294810
                                        P.O. Box 1248
                                        Bemidji, MN 56619-1248
                                        (218) 444-4529

RECEIVED
JUL 0 2 2009
Auditor / Treasurer
Itasca County, Minn.

| | |
|---|---|
| STATE OF MINNESOTA | IN DISTRICT COURT |
| COUNTY OF ITASCA | NINTH JUDICIAL DISTRICT |
| Case Type: CIVIL - PERSONAL INJURY | COURT FILE NO: |

Timothy Salisbury,

        Plaintiff,

                                            **COMPLAINT**

vs.

Itasca County; Deputy Rob Johnson, individually and in his official capacity; Deputy A.J. Morse, individually and in his official capacity,

        Defendants.

Plaintiff for his claim for relief, states and alleges that:

## PRELIMINARY STATEMENT

1. This is an action for money damages for injuries sustained by Plaintiff Timothy Salisbury, through the use of excessive force upon him by Itasca County deputies Johnson and Morse, both of whom were on duty and in uniform. This use of force, together with the contemporaneous conspiracy and other conduct of the defendants, violated Salisbury's federal civil rights and constitutes tortuous behavior on behalf of all defendants while acting under color of state law.

## PARTIES

2. Defendant Johnson was at all times material hereto a duly appointed and acting Sheriff's Deputy for Itasca County, acting in both his individual and official capacities.

3. Defendant Morse was at all times material hereto a duly appointed and acting Sheriff's Deputy for Itasca County, acting in both his individual and official capacities.

4. At all times material to the events complained herein, Plaintiff Salisbury was a citizen of the United States and was a resident of Itasca County, Minnesota.

5. Itasca County is a municipal corporation duly incorporated under the laws of the State of Minnesota.

## JURISDICTION

6. Plaintiff Salisbury brings this action pursuant to 42 U.S.C. §§ 1983, 1985, and 1988 and the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution, and under various state causes of action.

7. At all times material hereto the individual named defendants were acting under color of state law.

## FACTUAL ALLEGATIONS

8. At approximately 12:00 p.m., on July 6, 2007, Plaintiff Salisbury was involved in a verbal argument with his wife and step daughter, Kristin Kauppi (Kauppi), concerning insurance coverage on his step daughter's vehicle.

9. As a result of the argument, Kauppi called the Itasca County dispatch and requested that officers go the Plaintiff's residence.

10. Defendant Johnson and Deputy Greiner met with Kauppi, at another residence, where she alleged that the plaintiff had been drinking, was argumentative, causing trouble, that she had pushed the plaintiff and when her mother intervened that the plaintiff had pushed her mother once during the argument.

11. Defendant Johnson then proceeded to the plaintiff's residence and had requested

that defendant Deputy A.J. Morse assist him.

12. Upon arrival at the plaintiff's residence, defendant's Johnson and Morse met with the plaintiff's wife, who told the officers similar information as Kauppi did, alleging that there was a verbal argument, that Kauppi threw a drink on the plaintiff, and that the plaintiff pushed her once during the argument.

13. The plaintiff approached the defendant's and ask them what they needed.

14. The plaintiff informed the defendant's that nothing was going on other than an argument over insurance issues.

15. The plaintiff then requested that the defendants leave his property and not to return unless they had a warrant.

16. Defendant Johnson then told the plaintiff he was under arrest.

17. The plaintiff, who had not committed any crimes, asked defendant Johnson what he was being arrested for.

18. At this time, Defendant Johnson started to tell the plaintiff to put his hands behind his back.

19. While the plaintiff was standing there asking why he was being arrested, defendant Johnson brandished his Taser X-26 and threatened to use it against the plaintiff.

20. The plaintiff, not believing he would be tased for no reason and amazed that defendant Johnson was even threatening him with the taser, continued to verbally question the defendant about the entire situation.

21. During this exchange, while defendant Johnson had his Taser X-26 pointed at the plaintiff and was telling him to put his hands behind his back, the plaintiff stood there with his hands to his side.

22. At no time during this exchange did the plaintiff do anything physical towards the officers, try to run from the officers, or do in other actions that could be construed as physically aggressive towards the officer.

23. While the plaintiff was standing there, verbally questioning the situation, defendant Johnson shot him in the leg with his Taser X-26, causing the plaintiff to fall forward.

24. The defendant Johnson repeatedly deployed his Taser X-26, shocking the plaintiff multiple times and incapacitating the plaintiff, all while telling the plaintiff to put his hands behinds his back.

25. At about the same time Defendant Morse also discharged his Taser X-26 into the plaintiff's back and continuously shocked the plaintiff with the taser multiple times.

26. Defendant Morse also employed a "drive stun" with his Taser X-26 which is another function of the Taser X-26 designed simple to shock and cause pain and not to incapacitate.

27. While the plaintiff was being shocked by the officers, he was incapacitated and unable to control his body.

28. Defendant's Johnson and Morse continued to shock the plaintiff multiple times despite the fact that witnesses to the event told them that the plaintiff had a heart condition.

29. After shocking the plaintiff with their Taser X-26's in the manner set forth above, the plaintiff was arrested and taken to the Itasca County Jail.

30. That a videotape exists from both Taser X-26's, which shows the excessive use of force against Salisbury by defendants Johnson and Morse.

31. That in spite of the irrefutable evidence of the use of excessive force on the day of

July 6, 2007, Itasca County took no action to discipline the defendants Johnson and Morse, and instead, the above-referenced individuals, together with other unknown Itasca County agents and employees, did conspire to cover-up their actions that took place on the day in question, and thereby condone and ratify such actions taken against Salisbury on the day in question.

32.     That as part of the conspiracy referred to above, and the acts to hide the conduct in question, Deputies Johnson and Deputy Morse and other unidentified individuals did alter the taser videos in an effort to falsely attempt to allege that the injury inflicted upon the plaintiff by defendants Johnson and Morse was justifiable.

33.     That the evidence of this purposeful altering of the Taser Video is within the custody and control of Itasca County.

34.     That as part of conspiracy to cover-up their actions that took place on the day in question, the defendants falsely accused the plaintiff of physically resisting arrest and charged him with that crime.

35.     That the attempt by Itasca County and its agents, officers and employees, together with the named defendants herein, to attempt to hide the malicious injury caused to the plaintiff, together with the failure to discipline the officers involved therein, is part of a custom and practice of deliberate indifference to citizen complaints alleging misconduct, and a failure to discipline, remediate, counsel or retrain officers with histories of improper, abusive and intentional misconduct.

36.     That the supervisors of defendants Johnson and Morse have disregarded their supervisory responsibilities with respect to these individuals and failed to prevent them from unlawfully using excessive and unreasonable force in regard to their duties that put

them in contact with citizens of the United States of America.

37. That Defendant Itasca County, directly or indirectly, under color of law, has approved or ratified the unlawful, deliberate, malicious, reckless or wanton conduct of the individual defendants named herein.

38. Each of the following counts fully incorporates all proceeding and subsequent paragraphs herein.

## COUNT I: VIOLATION OF 42 U.S.C. § 1983

39. By the actions described above, each of the named defendants, all acting under color of state law, violated and deprived Plaintiff Salisbury of his clearly established and well settled right to be free from: the use of excessive and unreasonable force; the deprivation of liberty without due process of law; summary cruel and unusual punishment; denial of fair trial; and denial of medical attention; deprivation of equal protection of the laws.

40. The defendants subjected Salisbury to these deprivations of his rights either maliciously or by acting with the reckless disregard or deliberate indifference for whether Salisbury's rights would be violated by their actions.

41. As a direct and proximate result of the actions or omissions of these defendants, Salisbury suffered severe physical injuries, was forced to endure great pain and mental suffering, was deprived of his physical liberty, was forced to incur medical and legal expenses and was damaged in an amount exceeding $50,000.

42. Plaintiff is entitled to recovery of his reasonable attorney's fees under 42 U.S.C. § 1988.

## COUNT II: 42 U.S.C. § 1983 VIOLATIONS BY DEFENDANT ITASCA COUNTY

43. Both before and after July 6, 2007, defendant Itasca County tolerated, permitted, acquiesced in, failed to correct, and exonerated a pattern or practice on the part of defendants and others in their employ of unjustified, unreasonable and illegal uses of excessive force involving the use of their Tasers.

44. That Itasca County took no steps to appropriately discipline, remediate, counsel, retain or terminate the employment of, or otherwise correct, officers and employees with regard to the safe and appropriate use of their tasers.

45. As a result thereof, defendant Itasca County, under color of law, approved and or ratified such conduct, and thereby maintained a custom and practice of deliberate indifference to unjustified, unreasonable and illegal use of excessive force and other forms of unconstitutional conduct.

46. As a direct and proximate result of the aforesaid acts and omissions, systematic flaws, policies and customs of the defendant Itasca County, the individual defendants did injure Plaintiff Salisbury, and engaged in the above-described conduct in violation of Plaintiff Salisbury's civil rights, causing him compensatory damages in an amount exceeding $50,000.

47. Plaintiff is entitled to recovery of his reasonable attorney's fees under 42 U.S.C. § 1988.

### COUNT III: VIOLATION OF 42 U.S.C. § 1985

48. By the conduct described above, the defendants conspired to violate Plaintiff Salisbury's civil rights. Said conspiracy consists of engaging in or consenting to: the assault and battery of Salisbury; the failure to intervene and prevent known and observed civil rights violations; the failure to come to the assistance of a citizen in need of

protection; the attempt to hide such conduct; and other violations of Salisbury's civil rights as described above.

49. As a direct and proximate result of said conspiracy, defendants, and all of them, violated Salisbury's civil rights to his damage in an amount exceeding $50,000.

50. Plaintiff is entitled to recovery of his reasonable attorney's fees under 42 U.S.C. § 1988.

## COUNT IV: ASSAULT AND BATTERY BY DEFENDANTS JOHNSON AND MORSE

51. Defendants Johnson and Morse, acting in concert to use excessive force against the plaintiff, did assault and batter plaintiff Salisbury.

52. That as a direct and proximate result of this assault and battery, Salisbury suffered injuries and damages in an amount exceeding $50,000.

## COUNT V: NEGLIGENCE BY DEFENDANTS JOHNSON AND MORSE

53. That Defendants Johnson and Morse owed Plaintiff Salisbury a duty to refrain from unjustifiably injuring him while he was incapacitated, helpless, while being shocked and under Johnson and Morse's custody and control.

54. That Defendants Johnson and Morse should have known that the use of the tasers on the day in question was unwarranted under the circumstances, and that the amount of force applied would cause Salisbury injury.

55. That Defendants Johnson and Morse breached this duty owed to Plaintiff Salisbury.

56. That as a direct and proximate result of this breach of duty, Hihi suffered injuries and damages in an amount exceeding $50,000.

## COUNT VI: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS BY DEFENDANTS JOHNSON AND MORSE

57.  Defendants Johnson and Morse, acting in concert, intentionally inflicted emotional distress upon Salisbury by conduct that was extreme and outrageous.

58.  That as a direct and proximate result of this intentional infliction of emotional distress, Salisbury has suffered from bodily injury, severe emotional distress, and has suffered damages in an amount exceeding $50,000.

## COUNT VII: NEGLIGENCE BY DEFENDANT ITASCA COUINTY

59.  Salisbury's damages were directly and proximately caused by the negligence of defendant Itasca County with respect to its failure to adequately train, failure to discipline for previous civil rights violations, failure to correct the unconstitutional conditions, implicit authorization of inappropriate use of tasers, employment of the defendant police officers, the continued employment of defendant police officers with knowledge that they were overly aggressive and violent, improper supervision, the continued employment and retention of defendant police officers with responsibilities which placed them in high-risk positions for committing continued civil rights violations, and the deliberate indifference to the complaints of citizens about said officers.

60.  That as a direct and proximate result of this aforesaid negligence, Salisbury suffered damages in an amount in excess of $50,000.

## COUNT VIII: RESPONDEAT SUPERIOR

61.  That the actions of Defendants Johnson and Morse were all taken in the course and scope of their employment as agents and officers for Itasca County.

62.  That the intentional acts of the individual agents, officers and employees of Itasca County were taken within the time and place constraints of their work environment, and, given the nature of the activities of these employees, and the official taser policy of Itasca

County, such intentional acts were reasonably foreseeable.

63.     That as the employer of the individual named defendants Itasca County is vicariously liable under the doctrine of respondeat superior for all of their tortuous acts as alleged herein,

WHEREFORE, defendant Salisbury prays for judgment against the defendants, and each of them as follows:

1.      As to Count I, a money judgment against defendants Johnson, Morse and Itasca County, jointly and severally, for compensatory damages in an amount in excess of $50,000, together with reasonable attorney's fees, costs and disbursements and prejudgment interest;

2.      As to Count II, a money judgment against defendant Itasca County for compensatory damages in an amount in excess of $50,000, together with reasonable attorney's fees, costs and disbursements and prejudgment interest;

3.      As to Count III, a money judgment against defendants Johnson, Morse, and Itasca County, jointly and severally, for compensatory in an amount in excess of $50,000, together with the reasonable attorney's fees, costs and disbursements and prejudgment interest;

4.      As to Count VI, a money judgment against defendants Itasca County, Johnson and Morse, jointly and severally, for compensatory damages in an amount in excess of $50,000;;

5.      As to Count V, a money judgment against defendants Itasca County, Johnson and Morse, jointly and severally, for compensatory damages in an amount in excess of $50,000;

6.   As to Count VI, a money judgment against defendants Itasca County, Johnson and Morse, for compensatory damages in an amount in excess of $50,000;

7.   As to Count VII, a money judgment against defendant Itasca County, for compensatory damages in an amount in excess of $50,000;

8.   As to Count VIII, a money judgment against defendant Itasca County for compensatory damages in amounts in excess of $50,000;

9.   An award of costs of this action, including reasonable attorney's fees to the plaintiff; and

10.   For such other and further relief as this Court may deem just, fair and equitable.

Dated: July 2, 2009

HAZELTON LAW FIRM, PLLC
ATTORNEYS FOR PLAINTIFF


By: Michael R. Hughes – MN #0294810
P.O. Box 1248
Bemidji, MN 56619-1248
(218) 444-4529